**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **DELWANNA SIMPSON** | : | **CIVIL ACTION** |
| **Plaintiff,** | : | |
| | : | **No. 18-2272** |
| **v.** | : | |
| | : | |
| **TEMPLE UNIVERSITY AND** | : | |
| **T.J. LOGAN** | : | |
| **Defendants.** | : | |

**MEMORANDUM**

**McHUGH, J.** **OCTOBER 23, 2019**

This is an action brought under the Family Medical Leave Act ("FMLA"), 29 U.S.C. § 2601 *et seq*, alleging both that Defendants interfered with Plaintiff's right to FMLA leave, and that Plaintiff was unlawfully terminated in retaliation for seeking leave to which she was statutorily entitled. With discovery closed, Defendants have moved for summary judgment. Because the record is clear that Defendants made the decision to terminate Plaintiff before she requested leave, and did so for reasons wholly unrelated to her request for leave, Defendants' motion will be granted.

**I. Relevant Factual Background**

Plaintiff Delwanna Simpson worked for Temple University as the Assistant Director of Maintenance and Operations for five years, between November 2012 and January 2018. Simpson Dep. 24:13-15, 26:6-9, ECF No. 41-6. Defendant Temple University hired co-defendant T.J. Logan to be the Associate Vice President for Student Affairs in March 2017. In that role, Logan had supervisory authority over Plaintiff, although he was not her direct supervisor. Logan Dep. 11:18-22, ECF No. 41-7. Plaintiff received positive feedback for the skill and effort she displayed in her work throughout her tenure at Temple; however, she also

received warnings from her supervisors, including Logan, about her need to adopt a more supportive leadership style toward her subordinates. Def's Ex. D, 0042, ECF No. 28-4; Def's Ex. C, 0081, ECF No. 28-3.

After Logan was hired, there was a change in Plaintiff's direct supervisor. Logan informed Plaintiff that he was aware of her prior performance issues relating to staff supervision and that "her margin to gain trust from her staff was very narrow." Def's Ex. C, 0081. Logan began weekly meetings with Plaintiff "to ensure that [he] was doing everything possible to promote [Plaintiff's] success." *Id.* Nonetheless, issues with Plaintiff's performance continued. Logan Dep. 76:20-77:17, 81:12-82:7; Def's Ex. C, 0081; Def's Ex. E, 0084, ECF No. 28-5. In one instance, an employee, together with that employee's supervisor, came forward to complain that Plaintiff had "berated" and "yelled at" him. Logan Dep. 78:12-79:9; Def's Ex. C, 0081. In another instance, an employee approached Logan to express frustration with Plaintiff's "punitive" managerial style and requested to be transferred to another department. Logan Dep. 79:22-80:16; Def's Ex. E, 0084.

In December 2017, Plaintiff had a verbal confrontation with another employee not under her supervision. Simpson Dep. 145:4-148:12. Logan learned of the incident when he was contacted by another Temple employee who was also a union representative. Def. Ex. E, 0083. The employee raising the complaint—who was not under Plaintiff's supervision—reported that she was sequestered and yelled at by Plaintiff. Simpson Dep. 145:4-22; Def. Ex. C, 0082; Def. Ex. E, 0083. When the employee sought to leave the room and end the encounter with Plaintiff, she was threatened with insubordination, which was a terminable offense. Simpson Dep. 147:13-14, 148:13-149:5; Def's Ex. C, 0082. That incident was consistent with prior complaints about Plaintiff's management style. After investigating, Logan decided to terminate Plaintiff's

employment on Friday, January 19, 2018, telling Plaintiff that same day that he had lost faith in her ability to be a supervisor. Logan Dep. 82:11-14; Def's Ex. E, 0084. Plaintiff acknowledges that Logan communicated his lack of confidence in her at the January 19 meeting. Simpson Dep. 126:4-8.

That same day, following Logan's meeting with Plaintiff, Logan sent an email to human resources communicating his intention to terminate Plaintiff along with his underlying reasoning. Def's Ex. C; Logan Dep. 94:16-21, 95:14-24, 98:15-19. But before Logan could formally notify Plaintiff of his decision, he needed to complete additional steps in the regular termination protocol. Logan Dep. 34:4-35:17, 38:3-14, 45:16-46:1, 82:11-20. That involved, in part, Logan providing a second email to human resources detailing his decision to terminate Plaintiff, which he sent on Monday, January 22, 2018 at 10:53 a.m. Def's Ex. E.

The record further shows that on the morning of Monday, January 22, Plaintiff applied for two job openings, evidence consistent with an understanding on her part that she was being terminated by Temple following the meeting on Friday, January 19. Def's Ex. F, ECF No. 28-6; Def's Ex. G, ECF No. 28-7.

Later that evening she went to the emergency room experiencing abdominal pain and nausea. Simpson Dep. 114:15-17, 178:11-14. After being discharged the following morning on January 23, Plaintiff emailed the human resources staff person responsible for handling FMLA requests at Temple about obtaining medical leave pursuant to FMLA. Def's Ex. M, ECF No. 28-13. Logan was not copied on the email nor made aware of the request by Plaintiff or human resources staff. *Id.*; Simpson Dep. 202:20-24; Allen Dep. 20:16-19, ECF No. 28-14. Regardless, both his initial email communicating his decision to terminate Plaintiff, and his follow-up email

addressing the formalities required to implement the decision, on January 19 and 22 respectively, were sent ***before*** Plaintiff made her initial request for FMLA leave on January 23.

Plaintiff did not return to work that week. Logan Dep. 36:14-37:8. On Friday, January 26, Logan emailed Plaintiff her termination papers, having been unable to personally deliver them to her in her absence from work. Logan Dep. 71:6-24. Plaintiff subsequently filed the present action against Defendants on May 31, 2018, seeking monetary damages in the form of back pay and front pay, along with liquidation damages.

## II. Standard of Review

This Motion is governed by the well-established standard for summary judgment set forth in Fed. R. Civ. P. 56(a), as amplified by *Celotex Corporation v. Catrett*, 477 U.S. 317, 322-23 (1986).

## III. Discussion

### A. Interference Claim

Plaintiff now concedes that she cannot state a claim for interference because she cannot prove that leave was requested and denied for a "serious medical condition." Pl.'s Resp. to Mot. for Summ. J. at 3, ECF No. 41-2. Summary judgment as to this claim will therefore be granted.

### B. Retaliation Claim

Plaintiff attempts to lower her burden in proving retaliation by suggesting that I have previously held that an employee need not show actual eligibility for FMLA leave under the statute, but need only demonstrate a good faith belief in their FMLA eligibility. Pl's Resp. to Mot. for Summ. J. at 3-4. That is incorrect. To the contrary, I described this approach to the statute as an "open question of law" that I did not need to address. *Isley v. Aker Philadelphia*

*Shipyard, Inc.*, 275 F. Supp. 3d 620, 634 (E.D. Pa. 2016).[1] It remains an open question of law, and one I need not address for purposes of resolving this motion, because even if Plaintiff is permitted to bring a retaliation claim based on a good faith belief about her eligibility, the record here cannot support any inference of retaliation.

In order to successfully articulate a claim for retaliation under FMLA, a plaintiff must show that (1) she invoked her right to FMLA-qualifying leave, (2) she suffered an adverse employment decision, and (3) the adverse action was causally related to her invocation of rights. *Lichtenstein v. Univ. of Pittsburgh Med. Ctr.*, 691 F.3d 294, 302 (3d Cir. 2012). FMLA retaliation claims, like employment discrimination claims, require proof of the employer's retaliatory intent. *Capps v. Mondelez Global, LLC,* 847 F.3d 144, 151 (3d Cir. 2017).

Even when read in the light most favorable to Plaintiff as the non-moving party, nothing in the record is sufficient to establish that Plaintiff's invocation of her FMLA rights was causally related to her termination, the third requirement of the prevailing standard. The fatal weakness in Ms. Simpson's case is the undisputed timeline of events. Logan decided to terminate Plaintiff on Friday, January 19, and emailed human resources to initiate the termination process. *See* Def's Ex. C. Logan met with Plaintiff that same day and explained that he no longer believed she could carry out her leadership duties. Def's Ex. C. The following Monday, Logan sent another email to human resources reiterating his intention to terminate Plaintiff and detailing the series of events that influenced his decision. Plaintiff did not submit her request for FMLA leave to human resources until the following day, January 23. Her FMLA request cannot be said to have played any role in Logan's decision-making process, and the record does not show any

[1] Plaintiff *is* correct that I expressed admiration for Judge Mark Bennett's decision in *Johnson v. Dollar General*, 880 F.Supp.2d 967, 994 (N.D. Iowa 2012), but it is not necessary for me to adopt his holding in deciding the pending motion.

other indication that Plaintiff had signaled to the Defendants that she was planning on pursuing FMLA leave prior to January 23.

In coming to this determination, I give no weight to Temple's argument that Plaintiff went to the emergency room to "insulate" herself from termination, as that would require a credibility determination that would be improper on summary judgment. Def.'s Mot. for Summ. J. at 1. I also give no weight to Plaintiff's supplemental affidavits qualifying her deposition testimony, both because they do not materially change my analysis, and to the extent that such affidavits would contradict her deposition testimony, they are not properly considered in the absence a reasonable explanation for the change. *See Baer v. Chase*, 392 F.3d 609, 624 (3d Cir. 2004) (holding that a "party may not create a material issue of fact to defeat summary judgment by filing an affidavit disputing his or her own sworn testimony without demonstrating a plausible explanation for the conflict") (citations omitted).

In an attempt to show some causal connection between her FMLA request and her termination, Plaintiff emphasizes Logan's acknowledgement that by January 25, before her termination became final, he would have become aware of her FMLA request. Logan Dep. 70:3-11. But Defendants were under no obligation to revisit or revoke their earlier decision to terminate Plaintiff simply because they became aware of her request for FMLA leave at a later point. It might have been magnanimous for them to do so, but it does not follow that failure to reconsider a decision already made amounts to unlawful retaliation. To hold otherwise would mean that any employee could forestall termination simply by making an FMLA request once they learn of the employer's decision.

Plaintiff addresses pretext at some length. There is no need to reach the issue because Plaintiff has not established a causal relationship between her leave request and her firing. In

any event, Plaintiff's pretext argument misses the mark. Plaintiff develops a complicated theory that Logan wanted to fire her because of Logan's antipathy toward Plaintiff's former supervisor and was seeking any excuse to do so. Even if that were true, an employer's arbitrariness or unfairness in terminating an employee do not give rise to a claim; only a termination for reasons prohibited by federal law is actionable. And to the extent that Plaintiff argues there are credibility issues concerning Mr. Logan's true motivation, none are material to the FMLA claim before me.

## IV. Conclusion

For the foregoing reasons, Defendants' Motion for Summary Judgment is granted. An appropriate order follows.

/s/ Gerald Austin McHugh
United States District Judge